DOUCET, Judge.
Defendant, Scott Allen Thorne,, was charged by bill of information with attempted second-degree murder, a violation of La.R.S. 14:27 and La.R.S. 14:30.1, on September 26,1985. On April 26,1986, the jury returned a verdict of guilty of attempted second-degree murder. The state filed an habitual offender bill and the court found that defendant was a second felony offender. He was sentenced on May 16, 1986, to 55 years at hard labor without benefit of diminution of sentence for good behavior. Defendant then filed for an appeal with this court and his conviction was affirmed. State v. Thorne, 503 So.2d 760 (La.App. 3rd Cir.1987). Defendant filed a writ of certiorari with the Louisiana Supreme Court which was granted, 514 So.2d 1170 (La.1987). The case was remanded to this court in order to allow the trial judge to extend the time in which assignments of error numbers 2, 3, 4, 5, 6, 8, 13, and 15 could be filed and reviewed by this court. FACTS:
The following are the facts of this case as set forth in State v. Thorne, supra at 762-763:
“On September 19, 1985, at approximately 4:00 P.M., Theresa Gillespie was driving on the Twin Bridge Road, a two lane road in Rapides Parish. She passed a beige Volkswagen with a bumper sticker on the trunk reading, “DON’T LAUGH, IT’S PAID FOR.” A few minutes later she noticed that the car was on the next lane and that the driver, whom she did not know, was indicating that she had problems with her tire. Since she had had trouble with her tire in the past, she pulled her car over to the side of the road. The driver of the other car also exited his car and approached Gillespie. As she was bending down to examine the tire and realized nothing was wrong, the man, who had been standing behind her, displayed a steak knife with a serrated edge. Although she volunteered to give him money or her car, he stated that he wanted her to go with him and would “cut” her throat if she screamed. As she tried to run from him, he grabbed *1229 her by her hair and dragged her towards his car. He then opened the door on the driver’s side and placed her on the driver’s seat with her feet hanging out of the car. When she started kicking him, he attempted to stab her in the chest but because she moved, he stabbed her in the side. She continued to kick him and caused him to fall back and drop the knife on the road. She was then able to get out of the car and run down the road before tripping. As the assailant got into his car and drove away, she noticed part of the license plate number. The victim then got into her car and drove to a nearby store where an ambulance was summoned to transport her to a hospital.
The medical reports indicate the victim suffered a stab wound to the left lower lateral posterior chest. It appears that she received a life threatening wound, for she lost a large amount of blood and received blood transfusions.
Approximately an hour after the incident, Deputy Laughlin[1] visited the victim in the hospital. She described the assailant as a white male in his mid-20’s, weighing 140 pounds, measuring 5'7" to 5'9", and having light blonde hair. She described the car as a light beige Volkswagen with damage to the left rear bumper, with a license plate partially reading “25 E” and with a bumper sticker on the trunk stating, “DON’T LAUGH, IT’S PAID FOR.”
A bulletin describing the car and the assailant was broadcast by the sheriff’s radio operator. On September 23rd, a report was made that the described car had been seen at Finley’s Restaurant approximately 15 miles from the scene of the crime. Officers Laughlin,[1] Elias and Fairbanks proceeded to the restaurant and found the car whose characteristics matched those of the car described by the victim. The car at the restaurant was a light yellow Volkswagen with the license plate number 255E693, and with a bumper sticker on the trunk reading “DON’T LAUGH, IT’S PAID FOR.” Laughlin[1] testified that the car had been recently painted in several spots. A registration check of the car indicated that it belonged to Scott Allen Thorne, the defendant. The deputies entered the restaurant, asked for the defendant and placed him under arrest.
On September 25,1985, Deputy Laugh-lin [1] again visited the victim at the hospital and showed her five photographs, one of which was the defendant. She chose the photograph of her assailant. At trial, the victim again identified the defendant as her assailant.
At trial, Pat Wojtkiewioz, a forensic scientist who analyzed the blood from the victim and the defendant, and blood found in the defendant’s car, testified that the blood in the car was in the same group as the victim’s blood. He further stated that out of a group of 100,000 people, 499 people other than the victim could have left the blood.
Susan Garr, the manager at Finley’s testified that on the afternoon of the incident, the defendant left the restaurant at 4:00 P.M. and returned at approximately 4:30 P.M. According to Garr, he was perspiring, had no shirt, and claimed that he had problems with his car and had to push it. Harold Schumacker, who worked on the defendant’s car, testified that the car would not travel at 65 mph. The defendant also presented as a witness, J.P. Hickman, a mathematics teacher who testified that to travel from Finley’s to the scene of the crime and back after a ten minute delay, the car would have to travel at 70 mph. for 35 minutes.”
ASSIGNMENTS OF ERROR NOS. 2 AND 3:
These assignments of error assert that the trial judge erred in assuming a prosecu-torial function, in commenting upon the evidence, and in denying defendant’s right to cross-examination. These assignments were specifically dealt with in State v. *1230 Thorne, supra, and found to have no merit. Id. at 763-767. Thus, these assignments have no merit.
ASSIGNMENTS OF ERROR NOS. 4, 5, AND 6:
By these assignments, defendant maintains that the trial court erred: 1) in permitting the state to engage in improper rebuttal; 2) in allowing the state to impeach the credibility of defendant, who did not testify; and 3) in admitting into evidence alleged inculpatory statements when defendant was not provided with notice under La.C.Cr.P. art. 768.
We first address defendant’s claims that the trial court erred in permitting the state to engage in improper rebuttal and in allowing the state to impeach the credibility of defendant, who did not testify. Specifically, defendant objects to the state’s questioning of Deputy Elias about a rights waiver form that was executed by defendant and about the statements made by defendant after he signed the rights waiver form.
The testimony defendant complains of in this assignment of error had been previously covered during the direct examination of Detective Caughlin. At that time, no objection was made. Additionally, the testimony of Deputy Elias was cut off by a defense objection which was sustained after lengthy argument. The state withdrew the witness. At the time the objection occurred, the deputy had only begun to corroborate the previous testimony of Detective Caughlin. Moreover, his testimony was not used in any manner. Accordingly, we find that defendant suffered no prejudice.
We next address defendant’s contention that the trial court erred in allowing the admission of the statement, “I’m the one you’re looking for”, which was made by defendant when Deputy Caughlin was in Finley’s Restaurant and asked to see “Scott Allen Thome or the driver of the yellow Volkswagen parked out front.” Defendant maintains that the statement was inculpatory and he therefore should have received notice under La.C.Cr.P. art. 768. At trial, however, defendant objected only on the basis of hearsay. The failure to object on the basis of lack of notice at trial operates as a waiver on appeal. See State v. Willis, 438 So.2d 605 (La.App. 3rd Cir.1983). Moreover, even if defendant had not waived the lack of notice, we find that the trial judge was not in error since the statement does not constitute an inculpato-ry statement or a confession. All statements which are damaging in nature are not inculpatory. State v. Bodley, 394 So.2d 584 (La.1981). “As contemplated by article 768, an ‘inculpatory statement’ refers to an out of court admission of incriminating facts made by the defendant after the crime has been admitted. An incriminating statement is one which admits a fact tending to establish guilt, or from which guilt may be inferred.” State v. Seymour, 449 So.2d 1189, 1192 (La.App. 2nd Cir.1984), writ denied 452 So.2d 173 (La.1984). Applying those definitions to the statement made by defendant in light of the attendant facts and circumstances, we find that the statement is not inculpatory in nature. Accordingly, no notice was required under art. 768. Thus, this assignment is without merit.
ASSIGNMENT OF ERROR NO. 8:
In this assignment of error, defendant asserts that the trial court erred when it denied his motion for a new trial based on the contention that the state withheld exculpatory evidence concerning the testimony of a prosecution expert witness. Defendant adds that the state withheld information from the defense which is exculpatory by failing to inform the defense that the statistical possibilities proposed and testified to by the serologist, Pat Wojtkiew-ioz regarding blood typing were based only upon his own personal studies of some 2,200 cases.
As correctly stated by the state in its appellate brief:
“The record is absolutely void of any information that could conceivably show that the State had any information prior to trial that would have permitted it to disclose to the defendant that the expert
*1231 sample was based on his own experience as opposed to some generalized text book [sic] ratio.
It is obvious that a ruling in favor of the defendant on this error would be tantamount to requiring the State to not only disclose what its expert would testify to, but also to disclose (albeit impossible) all information and its source from which its expert reaches his conclusions. Such information would include text books [sic] read by the expert, lectures attended by the expert, and personal prejudice as experienced over the lifetime of the expert. Such requirement of disclosure of this information is exactly the basis for why an expert is tendered for cross-examination upon his competency before he is permitted to testify.
There is a basis for requiring the State to disclose the information that its expert may testify to, but there is no basis in law to require the State to ferret out information as to how its expert arrived at his conclusions.
The defendant was afforded all of his due process rights with regard to the questioning of this expert witness and he now complains not because the information disclosed by the expert was incorrect, but that the source of the ratio used by the expert was from the expert’s own experience as opposed to a text book [sic]. This argument offered by the defendant is absolutely without merit and shows no particular prejudice to the defendant.”
Defendant next asserts that he should have been furnished with all of the prior statements of the victim since her testimony constituted the only direct evidence against him. We disagree. While in the instant situation the trial judge did not require the state to furnish defendant with all of the prior statements of the victim, the trial judge did grant the defendant’s motion to review the statements in camera in order to determine if they contained any exculpatory material. Moreover, the trial judge pointed out to defense counsel every instance where the victim deviated from her prior statements. The procedure used by the trial judge has been held to satisfy the requirements of Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); State v. Stancill, 476 So.2d 810 (La.1985); State v. Junak, 436 So.2d 1312 (La.App. 4th Cir.1983), denied 442 So.2d 454 (La.1983); State v. Meriwether, 412 So.2d 558 (La.1982). Thus, we find no merit in this contention. With respect to defendant’s assertion that the denial of access to the victim’s prior statements denied him due process of law and the right to cross-examine the witnesses against him, we also find no merit. The trial judge furnished defense counsel with all of the material inconsistencies in the victim’s testimony for use on crossexamination. We find this to be sufficient. Thus, we find no error at the trial court level with respect to this issue.
ASSIGNMENTS OF ERROR NOS. 13 AND 15:
These assignments of error: 1) whether the verdict was contrary to the law and evidence; and, 2) whether the evidence supports a verdict of guilty of second degree murder were specifically discussed in State v. Thorne, supra at 770-772 and found to have no merit. Thus, these assignments are without merit.
For the reasons assigned, the conviction and sentence of the defendant, Scott Allen Thorne, are affirmed.
AFFIRMED.

. Throughout the quoted text, the name is misspelled as Laughlin, which should read Caugh-lin.